[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
By complaint dated February 24, 1998, the plaintiff husband, Dennis W. Campbell commenced this action seeking a dissolution of marriage on the grounds of irretrievable breakdown, custody, support, equitable distribution of property and other relief. The defendant wife, Mary J. Campbell appeared through counsel and filed an answer admitting the allegations in the plaintiffs complaint and a prayer for relief The Court further ordered that Attorney Frank Santy be appointed attorney for the minor child, Brian J. Campbell. The plaintiff and defendant appeared with counsel on February 28 and April 12 with the parties agreeing to custody and visitation and presenting testimony, exhibits and final argument on all contested issues. The counsel for the minor child was excused from appearing at trial. The Court, after hearing the testimony and reviewing the exhibits and final arguments, makes the following findings of fact.
The plaintiff husband was married to the defendant wife, whose maiden name was Mary J. Smith, on September 25, 1976 at Meriden, Connecticut. The plaintiff has resided in the State of Connecticut for one year next preceding the date of the filing of this complaint. All statutory stays have expired. The parties have one minor child who was lawful issue of the marriage of the parties, Brian James CT Page 5409 Campbell, born June 5, 1981 who has attained the age of majority while still in high school. No other minor children have born to the defendant wife since the date of the marriage. The Court further finds that no state or municipal agency has or is contributing to the support of the parties and the minor child.
The plaintiff is a 46 year old high school graduate. The plaintiff drank to excess until 1992 when he stopped drinking alcoholic beverages. The plaintiff underwent back surgery for a ruptured disk in the lower lumbar spine in 1983. The plaintiff referred to himself as a "old beat up electrician" in spite of his young chronological age. The plaintiff was required to take blood pressure medication prior to his cessation of use of alcohol and cigarettes. He presently takes Zanax and Prozac due to the emotional strain caused by the relationship of the parties and the pending dissolution of marriage action.
The defendant wife was 52 years of age at the time of trial and has a 10th grade education. As to her physical condition, the defendant suffered from a rotator cuff tear in August of 1999 while at work. She has also been recently diagnosed with an asthma condition. The defendant also broke her ankle at her apartment in Simsbury since the commencement of the case. As to her emotional and psychological condition, the defendant has been diagnosed as suffering from a personality disorder and post-traumatic stress syndrome. The defendant was hospitalized at Mt. Sinai Hospital in the summer of 1997 as an in-patient for one week and was discharged to out-patient treatment for approximately 4-1/2 months. Subsequent to her discharge from day treatment she commenced psychotherapy. She is presently visiting a therapist every other week with psychiatric evaluations on a monthly basis. The defendant is taking various medications for depression, anxiety, and her asthma condition. While the parties confirm that the defendant was diagnosed with a personality disorder and post-traumatic stress syndrome, no expert testimony or reports were submitted to the Court by either party. The Court finds that based upon the testimony from the plaintiff and defendant the defendant has suffered and is suffering from a psychological maladies that affect her ability to work and her ability to interact with her husband and her children.
The plaintiff has been a licensed electrician for approximately 27 years. He is presently employed by Electrical Contractors, Incorporated and earns an hourly wage of $17.00 per hour. In spite of the maladies referred to above, the Court finds that the plaintiff has continuously worked on a full-time basis since 1973 and will continue to do so in the future. The defendant, as indicated above, CT Page 5410 has limited formal education and has only obtained rudimentary job skills. During the initial stages of the marriage, the wife was employed as a wirer in the electronics field through 1978. From 1978 until 1986, the defendant was unemployed outside the home while raising the children. In 1986 the defendant began part-time employment at Fitzgerald Company as a cashier where she worked for a few months. In the fall of 1986 she obtained employment at Ensign Bickford for a period of 1-1/2 months. She again returned to Fitzgeralds on a part-time basis in approximately 1988 for approximately 9 years when she was fired from employment due to inappropriate interaction with customers. The defendant is presently employed on a part-time basis at Big Y formerly as a cashier. She is on light duty earning $7.95 per hour for approximately 15 hours per week in employment. The plaintiff has been unable to perform the regular duties of a cashier due to the problems with the rotator cuff tear and ankle break of September, 1999.
The Court hereby finds that the plaintiff husband is working to earning capacity, i.e., as a full-time employed licensed electrician. As to the employment capabilities of the wife, the Court finds that the defendant, upon repair of her shoulder and adequate psychological treatment, has the capacity for employment between 25 and 35 hours a week for light and/or sedentary employment. The plaintiff enjoys income at the rate of $694.00 per week reflecting a 13 week average prior to trial. The defendant's income reflects gross earnings of $119.00 per week representing 15 hours a week at $7.95 per hour. The defendant in the future as an earning capacity to make at least $198.75 per week based on an earning capacity of $7.95 per hour times 25 hours per week. Lucy v. Lucy, 183 Conn. 230 (1981).
The plaintiff and the defendant exchanged marital vows on September 25, 1976. This marriage was the first marriage for both the plaintiff and defendant. The record clearly reflects that the marital relationship entered into by the parties was not based upon mutual and full disclosure of important personal attributes. The defendant lied to the plaintiff as to her age. She represented to the plaintiff that she was 25 years old when in fact she was 28 at the time of the marriage. The defendant further misrepresented the status of her virginity. She failed to advise the plaintiff that she had a child born out of wedlock when she was 19 years old. The defendant further failed to disclose to the plaintiff inappropriate sexual contact by her father during her childhood. Even after the marriage, the defendant misrepresented the amount of her paychecks to her husband. While her mother was in a convalescent home, she refused to report to work on various dates and lied to her husband as to her employment and amount of income during that time. CT Page 5411
It would seem that the initial lack of disclosure and/or misrepresentations would result in the plaintiffs request for an annulment and/or divorce. On the contrary, the defendant accepted the wife's shortcomings and remained in the marital relationship. The parties had two children born to the wife since the date of the marriage. The eldest child, Melinda is over the age 18 years old and is presently matriculating at college. The minor child, Brian, born on June 5, 1981 is presently residing with the plaintiff in the marital residence. He will complete high school in June of 2000 with plans to enroll in college in September, 2000.
As to the contribution of the plaintiff to the marital discord, the plaintiff and defendant both testified to the defendant's excessive drinking prior to 1992. The defendant's psychological shortcomings and emotional mood swings clearly contributed to the breakdown of the relationship between the plaintiff and defendant. It is also clear that the plaintiffs drinking and verbal conduct with the defendant during the marriage also contributed to the breakdown of the relationship. Both parties claim physical abuse against the other prior to the initial separation of the parties in 1992 and thereafter. The Court finds that the physical abuse, if in fact any did occur as alleged by either or both parties, was not a cause of the breakdown of the relationship. The defendant's drinking until 1992 and the wife's psychological disturbances throughout the marriage were the major cause of the breakdown. Further, the tight finances of the parties resulting from the defendant's inability to obtain and keep regular employment for substantial amount of hours per week also contributed to the marital breakdown.
It is important to note that the parties initially separated in 1992 for a period of four years. The plaintiff left the home at the insistence of the defendant due to the breakdown of the relationship, i.e., the defendant's drinking and the plaintiffs psychological problems. The parties reunited in 1996 based on the defendant's fear of being alone and the plaintiffs necessity to try to resolve the marital differences and reunite the family. This attempt at reconciliation failed resulting in the present dissolution of marriage action and trial.
In reviewing the evidence in testimony of the parties, the plaintiff, should be commended for his attempt to make his marriage work after learning of the defendant's lack of candor and deceit. The parties tried to raise two children in a family atmosphere. During their first separation (1990-1996), the defendant raised the children with financial assistance from the plaintiff. The plaintiff was the CT Page 5412 primary parent caring for the children from 1996 to the present without financial assistance from the defendant. The plaintiff is also at fault for his conduct during the marriage. The defendant's drinking together with the wife's psychological problems created an unbearable atmosphere for the plaintiff and the defendant to reconcile their differences and save the marriage.
The plaintiff presents himself to the court as a hard working father of two children who is educating both children while maintaining the marital household with no financial assistance from the defendant. The defendant presents herself as an emotionally confused individual who blames her psychological problems only on her husband. She attributes no psychological problems or overlay from the alleged sexual abuse by her father during her childhood. She further contends she is suffering from physical maladies, i.e., healing ankle, rotator cuff tear and asthma prohibiting her to continue to obtain employment on a full time basis. In addition to the above problems, the record is clear that the defendant has been fired from previous employment due the lack proper conduct with customers.
The evidence also reflects that the wife's conduct concerning the sexual activities of her son and daughter in the context stated were inappropriate and cruel. The plaintiffs remarks during the marriage as to the stupidity of the wife in her conduct were also not acceptable and considering the psychological condition of defendant merely added fuel to the fire.
The parties are left with a marital residence presently occupied by the plaintiff, the plaintiffs retirement savings and a myriad of debt. It is clear by the financial affidavits in income earning capacities of the party that the defendant is not capable of managing or paying for the family residence. The plaintiff has a 401K plan value in the amount of $59,856.06 as of date of trial and a Golden Rule IRA valued in the amount of $26,727.41. The defendant also has incurred liabilities through trial in the amount of $37,197.00 as reflected on his financial affidavit with $12,000.00 of said debts representing estimated attorneys fees.
The defendant has no pension or profit sharing plan IRA or 401k plan reflected on her financial affidavit. She has incurred $12,425.00 of liability $3,875.00 of which is a attorney's fees owed to her prior counsel. She has no insurance coverage available to her other than COBRA benefits provided by federal and state law. Once the divorce decree is entered she will be entitled to COBRA benefits at the rate of $178.15 per month. The defendant has previously filed for Social Security Disability which was denied on the basis of her over income, CT Page 5413 i.e., employment at Big Y at 22 hours per week. The court heard testimony that the defendant is reapplied for Social Security with no evidence presented to the court as to the likelihood of success. Even if some security disability was granted the defendant would not be eligible for medicare until two years from the date of disability.
The court is left with the unenviable task of dividing the limited assets and incomes and debt of the parties in an equitable manner. The court must also take into consideration the substantial debt incurred by both as of the date of trial and the limited ability of the defendant to earn sufficient wages to support herself in the future even if she can work from 25 hours per week.
The court has considered all the statutory factors of the Connecticut General Statutes 46b-62, 46b-81, 46b-82 and other pertinent statutes, tax implications, and as previously stated the parties present earnings and future earning capacity, the cause of the breakdown of the marriage and the consequences of financial award as set forth below:
The judgment shall enter dissolving the marriage of the parties on the grounds of irretrievable breakdown. It is further ordered that:
1. Alimony. The plaintiff husband shall pay alimony in the amount of $125.00 per week terminating upon the death of either party, remarriage of the defendant wife, or cohabitation by the defendant as defined by statute whichever shall first occur. As further alimony, the plaintiff shall pay for COBRA health insurance for the defendant for as long as statutorily permissible or until the wife is able to obtain health insurance benefits at her place of employment at a reasonable cost, whichever shall first occur.
2. Marital Property. The wife shall quitclaim all of her right, title and interest in and to the marital property located at 45 Battles Road, Granby, Connecticut presently valued at $115,000.00. The plaintiff shall pay and hold the defendant harmless from any liability on the mortgage (present balance of $91,223.00) encumbrances thereon and any taxes and insurance owed. The credit of $11,000.00 owed by the defendant to the plaintiff for the $10,000.00 advance pendente lite and $1,000.00 owed by defendant to Attorney Frank Santy paid by the plaintiff is hereby repaid as a result of this order requiring the defendant to quitclaim her interest in said marital property.
3. Plaintiff's Pension and IRA. The plaintiff shall have all right, title and interest in and to the National Benefit Non-Standard CT Page 5414 401 PW Plan valued at $59,856.06 as of February 25, 2000. The plaintiff shall transfer by assignment of his right, title and interest in and to the Golden Rule IRA (present value $26,727.41) to the defendant.
4. Personal Property. The parties shall have all right, title and interest in and to the personal property (including automobiles and bank accounts) presently in each parties possession, with the exception of the following personal property which shall be transferred by the plaintiff to the defendant: (a) hope chest and contents (family room); (b) cupcake pans and cookie sheets (kitchen); (c) crystal punch bowl (alter); (d) pictures for daughter; (e) turntable (alter); (f) rolling pin (kitchen); (g) high school yearbook (son's room, top drawer); (h) other papers in top drawer of son's room; (i) records (in boxes in furnace room); (j) family picture album; (k) wedding album; (l) green vase; (m) rabbit plant holder.
5. Debts. The plaintiff and the defendant shall pay the debts listed on their financial affidavits dated February 28, 2000 and shall hold the other party harmless from any liability thereon.
6. Life Insurance. The plaintiff shall maintain the defendant as irrevocable beneficiary of not less than 1/2 of the death benefit on the Mutual Trust Life Insurance policy in the face amount of $150,000.00, the Midland National Life Insurance policy in the face amount of $100,000.00 (as listed on plaintiffs financial affidavit dated February 28, 2000) and any other life insurance provided by his present or future place of employment, as long as the plaintiff is obligated to pay alimony pursuant to the provision of this judgment. The plaintiff is prohibited from borrowing against, hypothecating and cashing in said policy or policies without written agreement of the defendant. The plaintiff will provide written proof to the defendant that she is the beneficiary for at least one-half (1/2) of the death benefits and the name, address and policy number of the insurer upon request of the defendant.
___________________, J. Devine